# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Camper v. Burnside Construction Co.*, 2013 IL App (1st) 121589

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL CAMPER, Plaintiff, v. BURNSIDE CONSTRUCTION COMPANY, an Illinois Corporation, BURNSIDE CONSTRUCTION MANAGEMENT COMPANY, an Illinois Corporation, and WELCH BROTHERS, INC., an Illinois Corporation, Defendants (Welch Brothers, Inc., Third-Party Plaintiff-Appellant; Neptune Construction Company, Third-Party Defendant-Appellee). |
| District & No. | First District, First Division<br>Docket No. 1-12-1589 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | September 30, 2013<br><br>October 17, 2013<br>October 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries suffered when plaintiff fell while working in a sanitary manhole manufactured by third-party plaintiff, the trial court's dismissal of the counts of third-party plaintiff's complaint seeking contribution and indemnification from plaintiff's employer, a subcontractor, after plaintiff settled and dismissed his claims against his employer and the general contractors was affirmed, since the order dismissing plaintiff's action raised a *res judicata* bar to third-party plaintiff's claims. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-01656; the Hon. Randye A. Kogan, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Busse, Busse & Grassé, P.C., of Chicago (Edward K. Grassé, Troy S. Radunsky, and Michael T. Peterson, of counsel), for appellant. |
| | Cassiday Schade, LLP, of Chicago (Thomas P. Boylan and Matthew S. Sims, of counsel), for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. Presiding Justice Connors and Justice Hoffman concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal arises from the December 21, 2011, February 27, 2102 and May 11, 2012 orders entered by the circuit court of Cook County, which collectively dismissed with prejudice a third-party action filed by third-party plaintiff Welch Brothers, Inc. (Welch), against third-party defendant Neptune Construction Company (Neptune). On appeal, Welch argues that: (1) the circuit court erred in dismissing with prejudice the contribution count of the third-party complaint; and (2) the circuit court erred in dismissing with prejudice the indemnification count of the third-party complaint. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                BACKGROUND

¶ 3    In January 2006, Michael Camper (Camper), an employee of Neptune, fell and sustained injuries while working in a sanitary manhole on a construction site in Elgin, Illinois. On January 16, 2007, Camper filed a four-count complaint against general contractors Burnside Construction Company and Burnside Construction Management Company (collectively, Burnside), and Welch (case No. 07 L 0517) (*Camper I*). In *Camper I*, Camper alleged causes of action for construction negligence (count I) and premises liability (count II) against Burnside, and alleged two counts of product liability against Welch, as manufacturer of the manhole, under the theories of strict liability (count III) and negligence (count IV).

¶ 4    On December 3, 2007, Welch filed a third-party action for contribution against Neptune under the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 2008)), alleging that, in the event that Welch is found liable to Camper, Welch is entitled to contribution from Neptune for its negligent actions. The *Camper I* third-party action did not

allege an indemnification claim or breach of contract claim against Neptune. Thereafter, Welch also filed a counterclaim for contribution against Burnside.

¶ 5 On November 20, 2008, Camper settled his claims against Burnside and Neptune for a total of $550,000. The settlement agreement stated that Neptune agreed to waive its claim for reimbursement under the Workers' Compensation Act (820 ILCS 305/5(b) (West 1994)).[1]

¶ 6 On December 12, 2008, Burnside filed a motion for a good-faith finding, requesting the court to find that the settlement agreement was made in good faith and to bar or dismiss any actions of contribution against the settling tortfeasors. On February 10, 2009, Welch filed a motion to conduct an evidentiary hearing prior to the court's ruling on Burnside's motion for a good-faith finding, in order to determine whether wrongful conduct occurred during the settlement process and whether there was a basis to enter a good-faith finding in favor of Burnside.

¶ 7 On February 13, 2009, following a hearing on the parties' arguments, the circuit court denied Welch's motion to conduct an evidentiary hearing and, over Welch's objection, granted Burnside's motion for a good-faith finding. The court's February 13, 2009 order expressly stated that the settlement between Camper, Burnside, and Neptune was made in good faith pursuant to the Joint Tortfeasor Contribution Act; that Camper's action against Burnside, and Welch's third-party action against Neptune, are dismissed with prejudice; and that the court "bars any actions for contribution by any other defendants or tortfeasors against Burnside or Neptune." The court further denied Welch's motion to amend its pleadings against Neptune to include other causes of action, and stated that Camper's cause of action shall continue against Welch as the sole nonsettling defendant in *Camper I*. No Supreme Court Rule 304(a) language (Ill. S. Ct. R. 304(a) (eff. Jan. 1, 2006)) was included in the order.

¶ 8 On April 22, 2009, Camper voluntarily dismissed his complaint against Welch without prejudice (735 ILCS 5/2-1009 (West 2008)). The circuit court's order voluntarily dismissing Camper's action against Welch expressly stated that Camper had reserved his right to maintain his cause of action "upon refiling of this matter in accordance with [s]ection 13-217 of the Illinois Code of Civil Procedure (735 ILCS 5/13-217) and there shall be no *res judicata* effect upon any claim."

¶ 9 On February 5, 2010, within one year of the April 22, 2009 voluntary dismissal of *Camper I*, Camper refiled his cause of action against Welch only, by alleging the same two counts of product liability based on strict liability (count I) and negligence (count II) (case No. 10 L 01656) (*Camper II*). The *Camper II* complaint contained nearly identical allegations against Welch as in the *Camper I* complaint. The *Camper II* complaint alleged that Camper was employed by Neptune when he fell and sustained injuries while working in a manhole in 2006; that the rungs used to ascend and descend the manhole were improperly or negligently designed, manufactured and assembled; that one or more rungs

---

[1]Based on the language of the settlement agreement, it is reasonable to infer, though neither party expressly states this in the briefs on appeal, that Camper made workers' compensation claims against his employer, Neptune, as a result of the injuries suffered in the course of his employment.

were missing or inadequately secured; and that Welch failed to warn of the dangers associated with these defects.

¶ 10      On May 19, 2010, Welch filed a two-count third-party action, seeking contribution (count I) and "indemnification/breach of contract" (indemnification claim) (count II) against Neptune. Count I alleged that Neptune, as Camper's employer, owed Camper a duty to provide a safe work environment, adequately inspect manholes used by its employees, and train its employees on the proper use of manholes. Count II alleged that Neptune and Welch entered into a purchase order agreement pursuant to which Neptune agreed to indemnify Welch. Specifically, count II alleged that "[i]f Welch is found partly or wholly responsible for any of the injuries alleged in [Camper's] complaint, which liability Welch denies and does not hereby waive its denial, Neptune should indemnify and hold harmless Welch pursuant to the terms of the [a]greement set forth herein." The relevant language of the purchase order agreement is set forth as follows:

> "[Neptune] shall indemnify and hold [Welch] harmless against any and all claims, demands, liabilities, losses, damages and injuries of whatsoever kind or nature, and all attorneys fees, costs and expenses relating to, or in any way arising out of the ordering, acquisition, delivery, installation, possession, maintenance, use, operation, control, loss, damage, destruction, return or surrender, sale or other disposition of any material supplied by [Welch]. This indemnity shall not be affected by any termination of this [a]greement with respect to said materials."

¶ 11      On November 5, 2010, Camper settled his claims against Welch in *Camper II*, and a court order was entered dismissing Camper's action against Welch with prejudice. The general release form signed by Camper contained language that Welch "reserves and retains all claims, demands, causes of action, defenses, counter-claims, third party claims including [Welch's] third party complaint against [Neptune], motions, pending or otherwise and damages, including attorneys fees and costs, consultants' fees and costs relating to any remaining claim raised in the [l]awsuit against any remaining [p]arty."

¶ 12      Subsequently, Welch filed a motion to modify the court's November 5, 2010 dismissal order, requesting a modification of the order to reflect that Welch's third-party complaint against Neptune remained pending.

¶ 13      On December 6, 2010, the circuit court entered an agreed order, which vacated the November 5, 2010 dismissal order and ordered Welch's third-party complaint against Neptune for contribution and indemnification to remain pending and not be dismissed.

¶ 14      On March 1, 2011, Welch filed a motion for a good-faith finding, requesting, *inter alia*, that the court enter an order finding that the settlement agreement between Camper and Welch was made in good faith, that all claims against Camper[2] be dismissed with prejudice, and that, pursuant to the court's December 6, 2010 order, Welch's third-party complaint against Neptune remain pending and not dismissed.

---

[2]This is likely a typographical error and instead could have stated that all claims against "Welch" be dismissed with prejudice.

-4-

¶ 15    On April 12, 2011, Neptune filed a section 2-619 motion to dismiss Welch's third-party complaint for contribution and indemnification on the basis that the claims were barred by *res judicata*, and filed an objection to Welch's March 1, 2011 motion for a good-faith finding.

¶ 16    On June 2, 2011, Welch filed a response to Neptune's motion to dismiss and objection to Welch's motion for a good-faith finding, arguing that, *inter alia*, its third-party claims against Neptune for contribution and indemnification were not barred by *res judicata*. Attached to the response as Exhibit B was a May 19, 2011 bystander's report filed by Welch's counsel, Troy Radunsky (Attorney Radunsky), which stated that during the February 13, 2009 hearing in *Camper I*, the court purportedly informed him that Welch was free to file a claim of indemnification or breach of contract against Neptune in a separate lawsuit and that such a claim was not barred by *res judicata*.

¶ 17    On July 15, 2011, Neptune filed a motion to strike Attorney Radunsky's bystander's report (motion to strike), arguing that the bystander's report "[stood] in sharp contrast to both [the court's] February 13, 2009 [o]rder in the underlying *Camper I* action and the transcript of the proceedings created at Welch's request." On that same day, July 15, 2011, Neptune also filed a reply in support of its motion to dismiss the third-party complaint and in support of its objection to Welch's motion for a good-faith finding.

¶ 18    On July 25, 2011, the circuit court denied Neptune's motion to strike the bystander's report and continued the matter. On December 21, 2011, the circuit court granted Welch's motion for a good-faith finding and granted Neptune's motion to dismiss with prejudice the contribution claim (count I) of Welch's third-party complaint. The circuit court's December 21, 2011 order stated that Neptune's motion to dismiss the indemnification claim (count II) of the third-party complaint would be continued to February 27, 2012 for the court to enter a written ruling. On December 27, 2011, Welch filed a "motion to reconsider, clarify and/or strike" (motion to reconsider) the portion of the circuit court's December 21, 2011 order which dismissed with prejudice Welch's contribution claim (count I) against Neptune in the third-party action.

¶ 19    On February 27, 2012, the circuit court denied Welch's motion to reconsider, finding, *inter alia*, that *res judicata* barred Welch's contribution claim (count I) against Neptune in the third-party action, and that count I should remain dismissed with prejudice. However, the circuit court denied Neptune's motion to dismiss the indemnification count (count II) of Welch's third-party complaint. The court again found that the settlement between Camper and Welch was made in good faith.

¶ 20    On March 28, 2012, Neptune filed a motion to reconsider the circuit court's February 27, 2012 order denying its motion to dismiss the indemnification claim (count II) of Welch's third-party complaint. In an order dated April 11, 2012, the circuit court stated that Welch "waives any written response to Neptune's motion to reconsider [the February 27, 2012 order] and will rely on prior briefs submitted to court."

¶ 21    On May 11, 2012, the circuit court granted Neptune's motion to reconsider the February 27, 2012 order, and dismissed Welch's indemnification claim (count II) with prejudice; thus, dismissing *Camper II* in its entirety.

¶ 22    On June 5, 2012, Welch filed a notice of appeal.

¶ 23                                    ANALYSIS

¶ 24    We determine the following issues on appeal: (1) whether the circuit court erred in dismissing with prejudice the contribution count (count I) of Welch's third-party complaint against Neptune in *Camper II*; and (2) whether the circuit court erred in dismissing with prejudice the indemnification count (count II) of Welch's third-party complaint against Neptune in *Camper II*.

¶ 25    We first determine whether the circuit court erred in dismissing with prejudice the contribution count (count I) of Welch's third-party complaint against Neptune in *Camper II*, which we review *de novo*. See *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569 (2002).

¶ 26    Welch argues that the doctrine of *res judicata* did not apply to bar the contribution count (count I) of its third-party action against Neptune in *Camper II*, where Camper's voluntary dismissal of his cause of action against Welch in *Camper I* had no impact on Welch's third-party action against Neptune. Welch further contends that the elements of *res judicata* were not satisfied and thus, the doctrine was inapplicable to bar its contribution claim against Neptune.

¶ 27    Neptune counters that the circuit court properly dismissed with prejudice Welch's contribution count (count I) in *Camper II*, because it was barred by the *res judicata* effect of the circuit court's February 13, 2009 order dismissing Welch's action for contribution against Neptune in *Camper I*. Specifically, Neptune contends that all three elements of the doctrine of *res judicata* were satisfied.

¶ 28    As discussed, in *Camper I*, on February 13, 2009, the circuit court expressly held that the settlement between Camper, Burnside and Neptune was made in good faith pursuant to the Joint Tortfeasor Contribution Act; that Camper's action against Burnside and Welch's third-party contribution action against Neptune were dismissed with prejudice; and that the court "bars any actions for contribution by any other defendants or tortfeasors against Burnside or Neptune." On April 22, 2009, Camper voluntarily dismissed without prejudice his complaint against Welch, as the sole nonsettling tortfeasor, and subsequently refiled his cause of action against Welch in *Camper II*. On May 19, 2010, Welch filed the instant *Camper II* third-party action against Neptune, seeking contribution (count I) and indemnification (count II). On December 21, 2011, the circuit court granted Neptune's section 2-619 motion to dismiss the contribution claim in the third-party complaint with prejudice, and, in the court's written ruling on February 27, 2012, denied Welch's motion to reconsider the dismissal of the contribution count by finding, *inter alia*, that *res judicata* barred the claim.

¶ 29    Under section 2-619 of the Illinois Code of Civil Procedure (the Code), an action may be involuntarily dismissed on the bases that "the cause of action is barred by a prior judgment" under a theory of *res judicata*, or that "the claim asserted against the defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(4), (a)(9) (West 2010). The term "affirmative matter" under section 2-619(a)(9) "has been defined as a type of defense that either negates an alleged cause of action

-6-

completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." *Krilich*, 334 Ill. App. 3d at 570. A section 2-619 motion to dismiss "admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim." *Id.* at 569-70. In ruling on such a motion, a court must construe the pleadings and supporting documents in a light most favorable to the nonmoving party. *Valdovinos v. Tomita*, 394 Ill. App. 3d 14, 17 (2009). Even if the circuit court dismissed on an improper basis, a reviewing court may affirm the dismissal on any proper ground supported by the record. *American Service Insurance Co. v. City of Chicago*, 404 Ill. App. 3d 769, 776-77 (2010).

¶ 30    The doctrine of *res judicata* provides that "a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." (Internal quotation marks omitted.) *Kiefer v. Rust-Oleum Corp.*, 394 Ill. App. 3d 485, 489 (2009). Three requirements must be satisfied in order for *res judicata* to apply: "(1) a final judgment on the merits has been reached by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Id. Res judicata* bars not only what was actually decided in the first action, but also those matters that could have been decided in that lawsuit. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998).

¶ 31    We note that Welch first argues that *res judicata* did not apply to bar the instant *Camper II* third-party contribution claim (count I) against Neptune because Camper's choice to voluntarily dismiss his *Camper I* cause of action against Welch had no impact on Welch's third-party action against Neptune. However, the record shows that the dismissal of Welch's third-party contribution action against Neptune with prejudice in *Camper I* arose out of the settlement of Camper's claims against Burnside and Neptune, rather than Camper's voluntary dismissal of *Camper I*. The record reveals that, on February 13, 2009, two months *prior* to Camper's voluntary dismissal of his cause of action against Welch, the circuit court found that the settlement between Camper, Burnside and Neptune was made in good faith pursuant to the Joint Tortfeasor Contribution Act. In the February 13, 2009 order, the circuit court dismissed Welch's *Camper I* third-party action for contribution against Neptune with prejudice. It was not until two months later, on April 22, 2009, that Camper voluntarily dismissed without prejudice its cause of action against Welch, who was then the sole non-settling defendant in *Camper I*. Thus, we find Welch's argument to be misplaced.

¶ 32    Turning to the elements of *res judicata*, we note that, with regard to the dismissal of Welch's *Camper II* contribution claim (count I) against Neptune, Welch does not dispute that the second and third requirements of *res judicata* are satisfied here. Thus, we need only address Welch's challenge to the first requirement.[3]

---

[3]We note that Welch's arguments against the application of *res judicata* in its opening brief before us interweaves both arguments pertaining to the dismissal of its *Camper II* contribution count (count I) and indemnification count (count II) against Neptune. Nonetheless, in resolving the issues on appeal, this court will address arguments pertaining to the dismissal of count I and count II separately.

¶ 33    The first element of *res judicata* requires that there be a "final judgment on the merits." See *Kiefer*, 394 Ill. App. 3d at 489. Welch argues that this element had not been satisfied because the circuit court's February 13, 2009 order granting a good-faith finding in favor of the settling parties (Camper, Burnside and Neptune) in *Camper I* did not constitute an adjudication on the merits for the purposes of *res judicata*. Neptune counters that the circuit court's February 13, 2009 order in *Camper I* constituted a final judgment on the merits.

¶ 34    Generally, orders dismissing an action with prejudice constitutes a final judgment on the merits for the purposes of *res judicata*. See *Nelson v. Chicago Park District*, 408 Ill. App. 3d 53, 61 (2011) (order dismissing a prior case with prejudice upon the execution of a termination agreement was a final judgment on the merits that satisfied the first element of *res judicata*); *Board of Education of Sunset Ridge School District No. 29 v. Village of Northbrook*, 295 Ill. App. 3d 909, 915 (1998) (a dismissal of an action with prejudice constituted an adjudication of that action on the merits); see also *Keim v. Kalbfleisch*, 57 Ill. App. 3d 621, 624 (1978) ("a dismissal 'with prejudice' is as conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication," and "the dismissal with prejudice of plaintiff's first complaint, pursuant to a settlement agreement, is a final judgment on the merits").

¶ 35    Supreme Court Rule 273 provides the following concerning the effect of involuntary dismissals: "Unless the order of dismissal or a statute of this [s]tate otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." Ill. S. Ct. R. 273.

¶ 36    In *SDS Partners, Inc. v. Cramer*, a plaintiff sued the defendants alleging that the defendants built a dam on their property that caused water to improperly divert water onto the plaintiff's property. *SDS Partners, Inc. v. Cramer*, 305 Ill. App. 3d 893, 894 (1999). The parties thereafter entered into a settlement agreement, which the circuit court found to be fair, and it dismissed the plaintiff's cause of action with prejudice. *Id.* at 894-95. Several years later, SDS Partners, Inc. (SDS), as the subsequent transferee of the property owned by the plaintiff, filed a new lawsuit against the defendants alleging that the dam which they constructed wrongfully diverted water onto SDS' property. *Id.* at 895. The defendants moved to dismiss SDS' complaint, by attaching a copy of the settlement order to the pleadings. *Id.* The circuit court then dismissed SDS' action, holding that it was identical to the original action filed by the plaintiff. *Id.* On appeal, SDS argued that its action was not barred by *res judicata* because the prior dismissal did not amount to an adjudication on the merits, where it was settled by the parties and never tried. *Id.* at 896. In rejecting SDS' argument, the reviewing court found that the settlement order in the original action was a final judgment on the merits, stating that the parties agreed to a resolution and the circuit court dismissed the action with prejudice–thereby, concluding the rights of the parties as if the matter had proceeded to trial and been resolved by final judgment. *Id.*

¶ 37    Likewise, in *Avery v. Auto-Pro, Inc.*, plaintiffs brought a negligence lawsuit against defendant, alleging that the defendant negligently repaired an automobile that subsequently crashed and injured the plaintiffs. *Avery v. Auto-Pro, Inc.*, 313 Ill. App. 3d 747, 748 (2000). The defendant then later filed a counterclaim for contribution against the plaintiffs, alleging

that the plaintiffs' negligent conduct contributed to their own injuries. *Id.* Upon motion by the plaintiffs, the circuit court dismissed the counterclaim with prejudice on the basis that the counterclaim was untimely filed. *Id.* The defendant never sought to appeal the dismissal of its counterclaim for contribution. *Id.* Subsequently, the plaintiffs voluntarily dismissed the lawsuit and refiled the case against the defendant within one year of the voluntary dismissal. *Id.* at 749. After the plaintiffs refiled the new lawsuit, the defendant again brought a counterclaim for contribution against the plaintiffs. *Id.* The plaintiffs then moved to dismiss the new counterclaim, arguing that the new counterclaim, which was identical to the original counterclaim, was barred by the dismissal of the original counterclaim. *Id.* The circuit court denied the plaintiffs' motion to dismiss, but certified the following question for interlocutory review: "Can a counterclaim plaintiff file a counterclaim for contribution based on negligence following the refilling [*sic*] of an original action that was voluntarily dismissed, when the negligence counterclaim for contribution had originally been dismissed before the voluntary dismissal?" (Internal quotation marks omitted.) *Id.* On interlocutory appeal, the reviewing court held that the circuit court should have granted the motion to dismiss the new counterclaim, finding that, under the plain language of Rule 273, the prior involuntary dismissal of the defendant's counterclaim operated as a final judgment on the merits and thus, satisfied the first element of *res judicata*. *Id.* at 750.

¶ 38        Applying the plain language of Rule 273 and the principles of *Cramer* and *Avery* to the instant case, we find that the first element of *res judicata* was satisfied. Welch's original third-party contribution claim in *Camper I* was dismissed for a reason other than for lack of jurisdiction, improper venue, or failure to join an indispensable party. It is undisputed that after Burnside filed a motion for a good-faith finding in *Camper I* on December 12, 2008, Welch filed pleadings to oppose the motion. Thereafter, on February 13, 2009, following a hearing on the parties' arguments, the circuit court entered an order finding, over Welch's objection, that the settlement between Camper, Burnside and Neptune was made in good faith pursuant to the Joint Tortfeasor Contribution Act; dismissing Camper's *Camper I* action against Burnside with prejudice; dismissing Welch's *Camper I* contribution action against Neptune with prejudice; and barring "any actions for contribution by any other defendants or tortfeasors against Burnside or Neptune." Thus, we find that the February 13, 2009 dismissal with prejudice of Welch's *Camper I* third-party contribution action against Neptune was an "involuntary" dismissal under Rule 273 and, thus, operated as an adjudication upon the merits. Further, like the settlement agreement in *Cramer*, Camper's settlement with Burnside and Neptune in *Camper I* was a final judgment on the merits for the purposes of *res judicata*, where the parties agreed to a resolution and the circuit court, on February 13, 2009, dismissed with prejudice Camper's action against Burnside and Welch's original contribution claim against Neptune. We find that, like the defendant in *Avery*, Welch never sought to appeal the dismissal with prejudice of its *Camper I* third-party contribution action against Neptune, nor did it request the court to include Rule 304(a) language in the February 13, 2009 order. Like the plaintiffs in *Avery*, Camper voluntarily dismissed his cause of action against Welch and refiled a subsequent new lawsuit against Welch, after which Welch again brought a new third-party action against Neptune. We find that, under the plain language of Rule 273 and the holdings in *Cramer* and *Avery*, the prior

involuntary dismissal of Welch's third-party contribution action operated as a final judgment on the merits.

¶ 39   Nonetheless, Welch cites *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70 (1994), and *Leow v. A&B Freight Line, Inc.*, 175 Ill. 2d 176 (1997), in support of its argument that the February 13, 2009 order granting a good-faith finding regarding Camper's settlement with Burnside and Neptune, and dismissing Welch's third-party contribution action against Neptune with prejudice, was not an adjudication on the merits. We find Welch's reliance on *Downing* and *Leow* to be misplaced. Those cases each involved a personal injury lawsuit filed by a plaintiff against an employee driver and the driver's employer, and our supreme court held that the dismissal with prejudice or the disposition by summary judgment of the claims against the individual driver did not bar the plaintiff's claims against the separate defendant–driver's employer–under *res judicata*. Unlike Neptune here, whose obligations were resolved by settlement in *Camper I* and against whom Welch's *Camper I* third-party action was dismissed with prejudice, the causes of action against the employers in *Downing* and *Leow* were not similarly resolved. Rather, only the causes of action against the employee drivers were resolved, which the *Downing* and *Leow* courts found had no *res judicata* effect upon the causes of action against the employers, as separate defendants in the plaintiff's lawsuits.

¶ 40   We further reject Welch's characterization of this court's findings in *Cellini v. Village of Gurnee*, 403 Ill. App. 3d 26, 39 (2010), in support of its argument that the February 13, 2009 rulings did not constitute adjudication on the merits. Welch quotes certain language out of context from the *Cellini* opinion, which does nothing to advance its argument. Welch neglects to mention that in *Cellini*, this court affirmed the circuit court's finding that the plaintiff and the settling defendant entered into a good-faith settlement agreement, and affirmed the circuit court's dismissal with prejudice of all counterclaims for contribution against the settling defendant. See *Cellini*, 403 Ill. App. 3d at 42. These facts are analogous to the facts of *Camper I*, where the circuit court made a finding of good faith with regard to the settlement between Camper, Burnside and Neptune, and dismissed Welch's *Camper I* third-party contribution action against Neptune with prejudice. We find Welch's reliance on *Cellini* to be inapposite. Therefore, we find that the first element of *res judicata* was satisfied.

¶ 41   With respect to the second and third elements of *res judicata*, there cannot be any serious dispute that these elements were satisfied. There is no dispute that Welch's *Camper I* contribution claim against Neptune and Welch's *Camper II* contribution claim (count I) against Neptune involved the same parties and identical allegations against Neptune. Thus, we find that the second and third elements of *res judicata* were satisfied. Therefore, we hold that *res judicata* applied to bar Welch's *Camper II* contribution claim (count I) against Neptune. Accordingly, we hold that the circuit court did not err in dismissing with prejudice Welch's *Camper II* contribution count (count I) against Neptune.

¶ 42   We next determine whether the circuit court erred in dismissing with prejudice the indemnification count (count II) of Welch's third-party complaint against Neptune in *Camper II*, which we review *de novo*. See *Krilich*, 334 Ill. App. 3d at 569. We can affirm the circuit court's dismissal on any proper ground supported by the record. See *American Service*

*Insurance Co.*, 404 Ill. App. 3d at 776-77.

¶ 43    The doctrine of *res judicata* extends not only to what was actually decided in the original action, but also to matters which could have been decided in that lawsuit. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334-35 (1996). As noted, Welch only sought a claim for contribution against Neptune in *Camper I* and did not allege a count for indemnification until Welch filed its third-party complaint against Neptune in *Camper II*. Thus, if all three elements of *res judicata* are met and Welch's *Camper II* indemnification claim (count II) could have been determined in *Camper I*, Welch will be barred from litigating the indemnification claim (count II) in *Camper II*. See *id.* at 338. Because this court has already determined that the circuit court's February 13, 2009 rulings constituted a final adjudication on the merits, and the parties in Welch's *Camper I* and *Camper II* third-party actions were identical, we find that the first and third requirements of *res judicata* have been met. Therefore, we need only determine if the second element has been satisfied–that is, whether the indemnification claim (count II) sought by Welch in *Camper II* has an "identity of cause of action" with the contribution claim sought by Welch in *Camper I*.

¶ 44    Welch argues that the second element of *res judicata* was not satisfied because there was no identity of cause of action between its *Camper I* contribution claim against Neptune and its *Camper II* indemnification claim against Neptune. Specifically, Welch contends that the *Camper I* contribution action was a cause of action arising out of potential tort liability, while the *Camper II* indemnification claim was based upon contract liability. Welch further asserts that the contribution claim and the indemnification claim relied upon two different sets of factual allegations for support.

¶ 45    Neptune counters that Welch forfeited for review on appeal any arguments relating to the second element (the identity of cause of action) of *res judicata*, because Welch never made such arguments before the circuit court. Notwithstanding forfeiture, Neptune argues that an identity of cause of action exists between Welch's *Camper I* contribution claim and Welch's *Camper II* indemnification claim against Neptune, where, although they assert different theories of relief, they arose from a single group of operative facts. In support of its argument, Neptune cites *Peregrine Financial Group, Inc. v. Trademaven, L.L.C.*, 391 Ill. App. 3d 309 (2009), and *Radosta v. Chrysler Corp.*, 110 Ill. App. 3d 1066 (1982).

¶ 46    As an initial matter, we address Neptune's assertion that Welch forfeited any arguments pertaining to the second element of *res judicata*, on the basis that Welch failed to make such arguments before the circuit court. See *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 24 ("arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal"). However, based on our review of the record, Welch's June 2, 2011 pleadings before the circuit court alleged that its indemnification claim against Neptune was not barred by *res judicata*, and all three elements of *res judicata* were generally enumerated in the pleadings. Thus, we find that Welch has not forfeited its challenges to the second element of *res judicata* on appeal.

¶ 47    Illinois applies the more liberal "transactional test" in determining whether identity of cause of action exists for the purposes of *res judicata*. *River Park, Inc.*, 184 Ill. 2d at 310-12. Under the transactional test, "separate claims will be considered the same cause of action for

-11-

purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* at 311. To determine whether there is an identity of cause of action between the first and second lawsuits, a court " 'must look to the facts that give rise to plaintiffs' right to relief, not simply to the facts which support the judgment.' " *Id.* at 309-10 (quoting *Rein*, 172 Ill. 2d at 338-39). An identity of cause of action is established "if two claims are based on the same, or nearly the same, factual allegations." *Peregrine Financial Group*, 391 Ill. App. 3d at 314.

¶ 48        In *Peregrine Financial Group*, a company sued Peregrine Financial Group (Peregrine) and TradeMaven, LLC (TradeMaven), for patent infringement in federal court. *Id.* at 309-10. The federal lawsuit was resolved when Peregrine and TradeMaven each entered into a settlement agreement with the suing company, and all three parties agreed to a consent judgment. *Id.* at 310. Subsequently, Peregrine filed suit against TradeMaven in state court to recover damages for, *inter alia*, indemnification. *Id.* The indemnification claim sought to recover $416,081.22 in attorney fees and costs Peregrine incurred in the federal patent litigation. *Id.* at 311-12. The circuit court then granted TradeMaven's motion for summary judgment on the indemnification claim, finding that it was precluded by *res judicata*. *Id.* at 312. On appeal, this court found that the patent litigation and the indemnification claim both arose out of a licensing agreement between Peregrine and TradeMaven. *Id.* at 315. Pursuant to the licensing agreement, Peregrine acquired the rights to use TradeMaven's software, which resulted in the federal patent infringement lawsuit, and TradeMaven agreed to indemnify Peregrine against such claims. *Id.* The reviewing court held that, because Peregrine's claim for indemnification arose out of the "same incident, events, transaction, circumstances, or other factual nebula" as the patent litigation, there existed an identity of causes of action between the two cases. (Internal quotation marks omitted.) *Id.* at 319. Thus, because the indemnification claim was not, but could have been, raised in the patent litigation, the reviewing court concluded that it was barred by *res judicata*. *Id.*

¶ 49        In *Radosta*, a truck driver lost control of his truck and collided with a car driven by the plaintiff. *Radosta*, 110 Ill. App. 3d at 1067. The plaintiff then filed a negligence lawsuit against the truck driver, and also sued the manufacturer and dealer of the truck for strict liability, negligence, and willful and wanton conduct. *Id.* The truck driver filed a counterclaim for negligence and strict liability against the manufacturer and dealer for the damage to the truck, but did not file any indemnification claims against the dealer or manufacturer for his potential liability to the plaintiff. *Id.* A jury verdict was rendered in favor of the plaintiff against all three defendants, and in favor of the truck driver on his counterclaim against the manufacturer and dealer for the damage to his truck. *Id.* Subsequently, the truck driver filed an indemnification action against the dealer and manufacturer, which the circuit court dismissed on the basis of *res judicata*. *Id.* at 1067-68. The reviewing court affirmed the circuit court's dismissal, finding that the indemnification claim was barred by *res judicata* because it arose out of the same group of operative facts in the first action and could have been raised at that time. *Id.* at 1068. The reviewing court specifically found that the truck driver's claim in both actions was based on the claim that the manufacturer and dealer sold him a vehicle with defective steering which caused an accident, and that they should be liable for damages resulting from the accident. *Id.* at 1069.

The reviewing court further found immaterial that the truck driver sought different damages in the second action from those sought in the first action, stating that the assertion of different kinds of relief or damages still constituted a single cause of action where a single group of operative facts gave rise to the assertion of relief. *Id.* In its holding, the reviewing court noted Illinois public policy against claim splitting and piecemeal litigation. *Id.* at 1068-69.

¶ 50 Like *Peregrine Financial Group* and *Radosta*, Welch's *Camper II* indemnification claim against Neptune arose from the same group of operative facts as its *Camper I* contribution action against Neptune. Both actions arose out of the injures suffered by Camper when he allegedly fell while working in a sanitary manhole on a construction site in January 2006, which gave rise to Camper's subsequent product liability claims against Welch, as manufacturer of the manhole, in *Camper I* and *Camper II*. Regardless of the fact that Welch's contribution claim in *Camper I* and the indemnification claim in *Camper II* assert different theories of relief against Neptune, both actions relied upon the circumstances surrounding Camper's accident that gave rise to the assertions of relief. Like the *Radosta* truck driver who did not include an indemnification claim in his counterclaim in the first action, Welch did not raise, but could have raised, the indemnification claim against Neptune in its third-party complaint in *Camper I*. Instead, Welch waited to bring a claim for indemnification against Neptune for the first time in *Camper II*. Thus, we find that an identity of cause of action existed between Welch's contribution action against Neptune in *Camper I* and Welch's indemnification action against Neptune in *Camper II*. Therefore, because all three elements were satisfied, we hold that the indemnification count (count II) in Welch's third-party complaint against Neptune in *Camper II* was barred by *res judicata*.

¶ 51 Nonetheless, Welch argues that, even if the elements of *res judicata* were satisfied, exceptions applied to circumvent the preclusion of its third-party claims against Neptune in *Camper II*. Welch contends that the circuit court's February 13, 2009 order and April 22, 2009 order, which voluntarily dismissed Camper's action against Welch in *Camper I*, as well as the May 19, 2011 bystander's report filed by Attorney Radunsky, expressly reserved Welch's right to maintain the third-party action against Neptune in *Camper II*. Welch further asserts that policies favoring preclusion of Welch's third-party action against Neptune in *Camper II* were overcome by extraordinary reasons.

¶ 52 Neptune counters that the circuit court's February 13, 2009 order and Attorney Radunsky's bystander's report did not expressly reserve for Welch a right to maintain the third-party action against Neptune in *Camper II*. Neptune further argues that Welch forfeited its arguments concerning the April 22, 2009 order, which are raised for the first time on appeal. Forfeiture aside, Neptune contends that the April 22, 2009 order did not operate as a reservation to allow Welch to file a new third-party action against Neptune in *Camper II*. Neptune further asserts that Welch forfeited review of its claim that "extraordinary reasons" precluded the application of *res judicata* to bar its third-party actions against Neptune in *Camper II*, and, notwithstanding forfeiture, Welch failed to show by clear and convincing evidence that any such extraordinary reasons existed to apply this exception.

¶ 53 Our supreme court has set forth six exceptions to the rule against claim-splitting, even when the elements of *res judicata* are met, including, *inter alia*, circumstances where "(2)

the court in the first action expressly reserved the plaintiff's right to maintain the second action; *** or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason." *Rein*, 172 Ill. 2d at 341.

¶ 54    We find that the February 13, 2009 order and the May 19, 2011 bystander's report filed by Attorney Radunsky did not expressly reserve for Welch a right to maintain the third-party action against Neptune in *Camper II*. As noted, in *Camper I*, the February 13, 2009 order expressly stated that the settlement between Camper, Burnside and Neptune was made in good faith; that both Camper's action against Burnside, and Welch's third-party action against Neptune, be dismissed with prejudice; and that any actions for contribution filed by any other defendants or tortfeasors against Burnside and Neptune were barred by the court. The court's order further denied Welch's motion to amend its pleadings against Neptune to include other causes of action, and stated that Camper's cause of action shall continue against Welch as the sole nonsettling defendant in *Camper I*. Welch now argues that its right to bring causes of action against Neptune in *Camper II* was reserved by the court's February 13, 2009 order, on the basis that the court *did not* deny Welch's right to bring subsequent additional causes of action against Neptune *with prejudice* and the order *did not* contain any Rule 304(a) language. We find this argument to be without merit, where the omissions by the court as suggested by Welch cannot be considered an "express reservation" under the exceptions to preclude *res judicata* effect upon Welch's subsequent third-party action against Neptune in *Camper II*. Rather, the plain language of the February 13, 2009 order *expressly* dismissed Welch's *Camper I* third-party action against Neptune with prejudice, denied Welch leave to amend its pleadings against Neptune to include other causes of action, and barred any actions for contribution against Neptune by any other defendants or tortfeasors. Nothing in the transcript of the February 13, 2009 proceedings or the February 13, 2009 order suggests that the circuit court expressly reserved for Welch a future right to file another third-party action against Neptune in *Camper II*. Further, while the February 13, 2009 order did not contain any Rule 304(a) language, Welch did not ask the court for inclusion of the language or seek to appeal the order following Camper's voluntary dismissal of *Camper I* on April 22, 2009. It is important to note that at the time the February 13, 2009 order was entered, there was no way either the circuit court or Welch possibly could have known that Camper would voluntarily dismiss his remaining claims against Welch in *Camper I* two months later in April 2009, or whether Camper would refile his cause of action against Welch within the one-year statutory requirements. Thus, we reject Welch's contention that the February 13, 2009 order expressly reserved Welch's right to maintain the *Camper II* third-party action against Neptune.

¶ 55    Welch directs this court's attention to a May 19, 2011 bystander's report filed by Attorney Radunsky, which was attached as Exhibit B to Welch's June 2, 2011 response to Neptune's motion to dismiss the third-party action in *Camper II*, in support of its argument that the court had expressly reserved Welch's right to file a new third-party action against Neptune in *Camper II*. The crux of the bystander's report stated that, during the February 13, 2009 hearing in *Camper I*, the circuit court purportedly informed Attorney Radunsky that Welch was free to file a claim of indemnification or breach of contract against Neptune in a separate lawsuit and that such a claim was not barred by *res judicata*. We reject this

contention. Supreme Court Rule 323 provides that a bystander's report may be provided by an appellant where "no verbatim transcript of the evidence of proceedings is obtainable." Ill. S. Ct. R. 323(c) (eff. Dec. 13, 2005). However, a bystander's report may not be based solely upon the drafter's own interpretation of the evidence and memory as to what happened during the proceedings, without acknowledgment by the opposing party and certification by the circuit court. *City of Pekin v. Mann*, 44 Ill. App. 3d 1, 2 (1976). We find that a verbatim transcript of the February 13, 2009 proceedings was provided to this court on appeal and, thus, under Rule 323, the bystander's report could not be used to supplement the record. Further, our review of the record shows that, while Neptune filed a motion to strike the bystander's report on July 15, 2011 and the circuit court thereafter denied the motion to strike on July 25, 2011, the record is devoid of any indication that the circuit court actually certified the bystander's report or that Attorney Radunsky, as counsel for Welch, complied with other procedural requirements set forth in Rule 323. See Ill. S. Ct. R. 323(c) (eff. Dec. 13, 2005); see *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (appellant has the burden to provide a complete record on appeal, and thus, any doubts which may arise from the incompleteness of the record will be resolved against the appellant). Indeed, the bystander's report, which was created over two years after the February 13, 2009 hearing and bears only the signature of Attorney Radunsky, was more akin to an attorney's affidavit than a bystander's report. See *Smith v. Central Illinois Public Service Co.*, 176 Ill. App. 3d 482, 497 (1988) ("an attorney's affidavit cannot be used to supplement the record in lieu of a transcript or a bystander's report"); *Mann*, 44 Ill. App. 3d at 2-3 (appellant may not proceed on a purported "bystander's report" which was only signed by the appellant's attorney and was based solely upon the attorney's interpretation of the evidence). Thus, we find that the express reservation exception to the doctrine of *res judicata* did not apply on this basis.

¶ 56    Welch further argues that exceptions to *res judicata* applied in the instant case because the circuit court's April 22, 2009 order, which voluntarily dismissed Camper's action against Welch in *Camper I*, expressly reserved Welch's right to maintain the third-party action against Neptune in *Camper II*. Welch further argues that policies favoring preclusion of Welch's third-party action against Neptune in *Camper II* were overcome by extraordinary reasons. We find these arguments to be forfeited for review because they are raised for the first time by Welch on appeal. See *Mabry*, 2012 IL App (1st) 111464, ¶ 24 ("arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal").

¶ 57    Forfeiture aside, we find that the April 22, 2009 order did not expressly reserve for Welch a future right to file another third-party action against Neptune in *Camper II*. As discussed, the April 22, 2009 order voluntarily dismissed Camper's action against Welch in *Camper I* and expressly stated that Camper had reserved his right to maintain his cause of action "upon refiling of this matter in accordance with [s]ection 13-217 of the Illinois Code of Civil Procedure (735 ILCS 5/13-217) and there shall be no *res judicata* effect upon any claim." Based on our review of the entirety of the April 22, 2009 order, we find nothing in the plain language of the order to suggest that the court was expressly reserving Welch a right to file a subsequent third-party action against Neptune, against whom all pending claims had been terminated by the circuit court approximately two months earlier on February 13, 2009. See *Kiefer*, 394 Ill. App. 3d at 494 (circuit court orders must be interpreted from the

entire context in which they were entered, with reference to other parts of the record including the pleadings, motions and issues before the court and the arguments of counsel; orders must be construed in a reasonable manner to give effect to the apparent intent of the circuit court). Welch points to isolated phrases in the April 22, 2009 order, such as that Camper's voluntary dismissal was entered "without prejudice and costs to any party" and that "there shall be no *res judicata* effect upon any claim," as bases for its arguments that the circuit court expressly reserved Welch's right to file a later third-party action against Neptune in *Camper II*. We reject this argument, and find that the April 22, 2009 order, when viewed in the entire context in which the order was entered, clearly pertained only to Camper's voluntary dismissal of his action against Welch in *Camper I* and the reservation of Camper's statutory rights to refile his claims against Welch within one year of the voluntary dismissal. Thus, the express reservation exception of *res judicata* did not apply on this basis. Likewise, forfeiture aside, we find that Welch, in pointing out its powerlessness to prevent Camper from voluntarily dismissing his cause of action in *Camper I*, has not clearly and convincingly shown any extraordinary reasons that could overcome policies favoring preclusion of Welch's third-party action against Neptune in *Camper II*. Thus, we find that no exception to *res judicata* should apply on this basis. Therefore, we hold that the doctrine of *res judicata* barred the contribution count (count I) and indemnification count (count II) of Welch's third-party action against Neptune in *Camper II*.

¶ 58        Moreover, we find that the indemnification count (count II) of Welch's third-party action against Neptune in *Camper II* was properly dismissed with prejudice by the circuit court for the additional reason that it violated the Construction Contract Indemnification for Negligence Act (the Anti-Indemnity Act) (740 ILCS 35/1 *et seq.* (West 2010)). The Anti-Indemnity Act provides:

> "With respect to contracts or agreements, either public or private, *for the construction, alteration, repair or maintenance of* a building, structure, highway bridge, viaducts *or other work dealing with construction, or for any moving*, demolition or excavation *connected therewith*, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence *is void as against public policy and wholly unenforceable*." (Emphases added.) 740 ILCS 35/1 (West 2010).

As discussed, the relevant language of the purchase order agreement between Welch and Neptune sought to indemnify Welch against "any and all claims *** arising out of the ordering, acquisition, delivery, installation, possession, maintenance, use, operation, control, loss, damage, destruction, return or surrender, sale or other disposition of any material supplied by [Welch]." The affidavit of Welch's general manager, Nick Martinec, attests that Welch manufactured and delivered the manhole by unloading it from a truck and setting it on the ground at the construction site. Based on this evidence, we find that the work performed by Welch constituted "other work dealing with construction" and "for any moving *** connected therewith" within the scope of the Anti-Indemnity Act. Thus, we find that the indemnification clause of the purchase order agreement, which sought to indemnify Welch for "any and all claims" arising out of the enumerated conduct, was void as against public policy under the Anti-Indemnity Act. Therefore, because the indemnification clause was void and unenforceable, the circuit court properly dismissed Welch's indemnification claim (count

-16-

II) against Neptune with prejudice in *Camper II*. Accordingly, we need not address Neptune's alternative arguments for relief on appeal.

¶ 59      For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 60      Affirmed.